(139 App. Div. 378.)

COMSTOCK v. VILLAGE OF SCHUYLERVILLE.

(Supreme Court, Appellate Division, Third Department.   June 29, 1910.)

1. MUNICIPAL CORPORATIONS (§ 812*)—DEFECTIVE SIDEWALKS—NOTICE—TIME OF INJURY.

A notice to a city of injury sustained on a defective sidewalk, specifying the time as "on or about the 17th day of December, 1906, about 8:45 p. m.," was not fatally defective because of uncertainty, especially where the injury occurred on the day named.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1702; Dec. Dig. § 812.*]

2. MUNICIPAL CORPORATIONS (§ 812*)—DEFECTIVE SIDEWALKS—NOTICE—PLACE OF INJURY—SCOPE.

A notice of injury on an alleged defective sidewalk, specifying the place as a point in the sidewalk of said Main street and on the west side thereof, and at the intersection thereof with Grove street, and about the middle of said street, was sufficient to warn the city to examine the condition of the crosswalk between the curbs, and to authorize a recovery for an injury caused by a defect within that space, especially where the city made no request to submit to the jury the question whether it was misled thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1701, 1702; Dec. Dig. § 812.*]

3. MUNICIPAL CORPORATIONS (§ 818*)—DEFECTIVE SIDEWALKS—ICE RIDGES— SUBSEQUENT CONDITION—EVIDENCE.

Where plaintiff sued for injuries on a city crosswalk by reason of certain ice ridges alleged to have occurred December 17, 1906, at 8:45 p. m., and it was undisputed that it rained somewhat on the day of the accident, and at 7 o'clock that evening got colder and froze, evidence as to the condition of the walk with reference to lumps and ridges on the next morning was admissible.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1733; Dec. Dig. § 818.*]

4. MUNICIPAL CORPORATIONS (§ 818*)—DEFECTIVE SIDEWALKS—ICE RIDGES— EVIDENCE.

In an action for injuries on a city crosswalk alleged to have been sustained by lumps or ridges of ice claimed to have occurred on an evening while the water was freezing, evidence of an insufficient drain in the gutter of the cross-street, offered to show the probability of the existence of the condition alleged, was inadmissible, where it appeared that the gutter would overflow and water run across the crosswalk only in times of heavy storms, in the absence of any evidence of such a storm occurring in freezing weather.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1728; Dec. Dig. § 818.*]

5. MUNICIPAL CORPORATIONS (§ 816*)—DEFECTIVE CROSSWALK—NOTICE OF INJURY—EVIDENCE.

Where notice to a city of injuries alleged to have been sustained on a crosswalk specified that plaintiff was injured by reason of ice lumps or ridges thereon, evidence of an insufficient drain in a gutter of one of the cross-streets causing water to flow over the crosswalks on certain occasions was not objectionable because the notice of injury did not specify the defective drain as a ground of defendant's negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 816.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. MUNICIPAL CORPORATIONS (§ 819*)—DEFECTIVE CROSSWALK—INJURIES—
NEGLIGENCE—EVIDENCE.

In an action for injuries to plaintiff on an icy walk, evidence *held* insufficient to show that plaintiff was injured by reason of alleged lumps or ridges of ice on the crosswalk, or, if so, that defendant was negligent in permitting them to remain there.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

7. MUNICIPAL CORPORATIONS (§ 771*)—CROSSWALKS—SNOW AND ICE—DUTIES OF CITY.

Where a crosswalk was located at the foot of a steep descent of a cross-street over which water must necessarily flow in case of rain or thaw, the city was only bound to use reasonable care to keep the walk clear of ice under all the surrounding circumstances.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1627; Dec. Dig. § 771.*]

Appeal from Trial Term, Saratoga County.

Action by Helen E. Comstock against the Village of Schuylerville. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Edgar T. Brackett (Wm. S. Ostrander, of counsel), for appellant.

Rockwood, McKnight & McKelvey (Nash Rockwood, of counsel), for respondent.

SMITH, P. J. About 9 o'clock upon the evening of December 17, 1906, this plaintiff fell upon a crosswalk in the defendant village. For the injuries sustained by that fall she seeks to charge defendant in damages. This case has been examined with especial care, by reason of its importance, and of the fact that we were not aided by the oral argument of counsel, and also by reason of the contention of defendant's counsel that his case was prejudiced by bias on the part of the trial judge. I do not find in the case any basis whatever for this charge. There is nothing in the record which indicates other than an impartial and fair trial to the defendant, of which the defendant has no other cause of complaint than certain rulings upon questions of law, which will be later discussed.

Nor can I agree with defendant's counsel that the notice of injury is not sufficient to support the claim made by the plaintiff upon the trial. Two criticisms are made of this notice. First, that the time is stated as "on or about the 17th day of December, 1906, about 8:45 p. m."; and the place "at a point in the sidewalk of said Main street, and on the west side thereof, and at the intersection thereof with Grove street, and about the middle of said street." The defendant's contention that the time is insufficiently stated finds some support in the case of Lee v. Village of Greenwich, 48 App. Div. 391, 63 N. Y. Supp. 160. That case was decided by this department, and in the opinion it is stated that a notice of an injury "on or about" a certain date is too indefinite as to time. In that case, however, the injury is stated to have occurred simply upon a certain street, without designating

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

where upon that street. The notice was therefore held defective both as to the time and place. As far as that decision may be deemed a holding that a statement of time as "on or about" a certain date renders the notice defective, we think it should be overruled, especially where the injury is shown to have occurred upon the date named. It is not necessary here to decide what latitude should be given by the courts to the expression "on or about." That probably should be for the trial court to determine under the peculiar circumstances of each case, having in view the extent to which the indefiniteness of the expression may have misled the municipal authorities. The criticism of the notice as to the place of the accident is not so much a criticism of the notice itself as that it is made the basis of a claim that plaintiff's attempt to recover for a fall upon the northerly end of the crosswalk, from 4 to 6 feet therefrom, is not authorized by this notice. The street is 50 feet wide. The specification as to the place of the accident is not strictly accurate, as it was attempted thereafter to be proven by the plaintiff. I think the notice, however, might fairly be deemed a warning to the city to examine the condition of the crosswalk between the curbs, and to authorize a recovery for an injury caused within that space, especially in the absence of a request by the municipality for a submission to the jury of the question as to whether the municipality was misled thereby.

As to the rulings upon the trial challenged by the defendant, mention will be made only of one specific ruling. The plaintiff claimed negligence on the part of the village in allowing lumps and ridges of ice to be and remain upon the crosswalk, claiming that her injuries were caused thereby. The evidence is undisputed to the effect that it rained somewhat upon the afternoon and at 7 o'clock in the evening of the day of the accident; that late in the day it began to get colder and froze up in the evening and night. James E. Bennett was called as a witness for the defendant. He passed over this sidewalk the next morning, and was asked to state its condition with reference to any lumps or ridges there. This was objected to by the plaintiff's counsel, because it referred to a time after the accident, and upon this ground the evidence was excluded by the trial court. The fact as to the existence of lumps and ridges upon this walk was made the sole condition of the plaintiff's recovery. Having frozen the night before, whether there were lumps and ridges upon this crosswalk the morning after became material as evidence whether there were lumps and ridges upon the crosswalk at 9 o'clock the previous night. The evidence was important and competent, and its rejection was error.

The main controversy in the case arose as to the admission of evidence of an insufficient drain in the gutter upon one of the streets. Broadway in the village of Schuylerville, or "Main street" as it is sometimes called, ran north and south. Into this street from the west ran Grove street. Immediately from Main street the grade of Grove street began to ascend sharply for a considerable distance. Upon the northerly side of Grove street was a gutter. In that gutter, upon the westerly side of the crosswalk in question, was a catch-basin, from which an eight-inch pipe led away as far as possible the waters coming down the gutter. The plaintiff was allowed to show that by rea-

son of the construction of this drainpipe, in connection with the drain-pipe from the gutter in Broadway, an insufficient drainage was provided in this gutter in Grove street, so that in times of heavy storms the waters would overflow from the gutter and run across this crosswalk, thereby, as it was claimed, creating ridges of ice, upon one of which the plaintiff is claimed to have fallen. This evidence was strenuously objected to by the defendant's counsel upon two grounds: First, that it was not specified in the notice of injury as the ground of the defendant's negligence. The second objection went to its materiality. This first objection was properly overruled by the learned trial court. The evidence was not allowed as establishing a separate ground of negligence on the part of the municipality. The evidence was simply allowed as bearing upon the probability of there being ridges of ice upon the crosswalk, the existence of which for a length of time was claimed to have been negligently allowed by the municipality. The distinction was properly made, provided the evidence fairly tends to establish the existence of such ridges. With the conclusion of the learned trial justice upon this question, however, I cannot agree. The question in issue was not whether the drain was insufficient, not as to its construction, but simply whether the water was accustomed to overflow at this point, and thereby cause ridges of ice. Not one word of evidence was given that any ridge of ice was thus formed; not one word of evidence that any overflow from this drain occurred in freezing weather. One witness swears that there was an overflow between one and two weeks before the accident. He does not swear, however, to any facts which would justify the jury in finding that any ridges of ice were caused thereby. It is not claimed by any of the witnesses, either for plaintiff or defendant, that this drain was not sufficient in all ordinary rains. The plaintiff's expert only claims that it was insufficient in heavy storms. These heavy storms or cloud-bursts are not usually the accompaniments of freezing weather, but are more prevalent in the summer, the spring, or the fall, and if in the winter, during a period when the thermometer is above freezing point. It is not enough, therefore, to show these spasmodic overflows from this gutter. They must at least be shown to have occurred in freezing weather and at a time so near to the date of the accident as within reasonable inference to have caused the ridges upon which plaintiff fell. An ice ridge, such as is here claimed, is not formed by an overflow from a heavy storm, but by a slow stream, and then only when it is running in freezing weather. Much less likely is a lump of ice to be so formed. Further, there is only one witness who is claimed to have sworn that any ice resulted from these overflows, and that is the witness Chubb. When the evidence of this witness is examined, it is not clear that he intended to swear that the ice in winter was formed by these overflows, and he does not swear that any ridge of ice was formed thereby at the particular place where the plaintiff claims to have received her injuries, or at any other place. Here was a street 50 feet wide coming to this crosswalk with a steep descent. It was perfectly natural that water should flow down that street as well as down the gutter; in fact, it was impossible that it should be otherwise. Moreover, in thawing weather the water from melting

snow and ice would trickle from this street across this sidewalk, only to freeze up as the temperature lowered. But, again, the nature of these ridges preclude the inference which plaintiff seeks to have drawn. The evidence is to the effect that these ridges of ice were from four to six inches in length. One witness only swears that one or two of them were a foot in length. A ridge of ice formed by an overflow is not a short, choppy ridge, but is of necessity a continuous ridge. The condition here arising differs materially from the case where ridges have been formed by water from a roof gutter which threw the water directly upon the walk. From such a gutter there is always a flow whenever it rains, and if the flow be slight and the weather be cold a ridge is formed thereby. The leaving of such a gutter which took whatever rain might fall might well be deemed to be a nuisance which the municipality was bound to abate. As the defective drain in the case at bar threw the water across this walk only in case of heavy showers, the evidence lacks the essential element of admissibility which is present in the case of any instrumentality which throws water upon a given place in all temperatures and at all times of rain. I am convinced, therefore, that the plaintiff failed to make competent her evidence of this defective gutter drain, by wholly failing to show that the ridges upon which she claims to have fallen were in any degree caused thereby. The jury has been allowed to speculate that they might have been so caused.

Assuming, however, that the defendant was guilty of negligence in allowing ridges of ice to accumulate and remain upon this crosswalk, the plaintiff has failed to show that her fall was caused thereby. It would seem to be established beyond question that at 8:45 on the evening of December 17, 1906, the streets of the village of Schuylerville were covered with a sheet of ice. It had been raining in the afternoon and was raining at 7 o'clock. It then froze up, so that many people took the center of the street, without daring to trust to the sidewalks. The streets were so slippery that one of the men who helped this woman just after her fall swore that he could hardly stand upon the crosswalk, and declined to take her up the hill, by reason of its icy condition. It is true that this witness speaks of a ridge of ice upon the crosswalk; but that ridge of ice was along the easterly side of the walk, caused by the snowplow, and was not the ridge of ice upon which this plaintiff claims to have fallen.

Again, plaintiff has failed to prove satisfactorily that her fall was caused by a ridge or lump of ice. The only evidence that plaintiff's fall was caused by any ridge of ice is her own evidence, and that itself is very uncertain. She swears herself that "as nearly as I can say I fell on a lump or ridge of ice in the middle of the walk." She says that she did not feel the ridge until after she was lifted up, and then she felt a "lump of ice between my feet." This lump of ice she thought was about three or four inches. She does not claim at any time to have seen the ridge or lump upon which she claims to have fallen. There is no evidence which rises to the dignity of proof that the lump or ridge of ice which she felt between her feet after she got up caused her fall. After she was picked up with a broken wrist and broken hip, it is not at all probable that she could, without seeing

it, measure a lump of ice between her feet. This village has been charged with liability purely upon her speculation that she "must have fallen" upon a ridge or lump of ice at a time when the whole village was covered with a sheet of ice, and pedestrians took the street by reason of the danger involved in using the walks. This, too, is in the face of her sworn declaration in her notice of claim that she fell upon the crosswalk in the middle of Grove street, where the ridges and lumps were less prominent. While this declaration, as I have indicated, does not bar her recovery for an injury sustained upon a point nearer to the curbing of the street, it is nevertheless not without significance in a case where the jury has been so freely allowed to speculate as to the cause of her fall.

In this discussion I have for the argument assumed the defendant's negligence. It is not every ridge or lump of ice, however, which will render a municipality liable in damages to one injured thereby. Upon a crosswalk where horses, sleighs, wagons, and people pass and repass in weather when the snow or ice is soft, lumps and ridges are necessarily formed, which will harden when frozen, and for which the municipality will not be responsible. Upon the afternoon of the day in question the weather was soft, and the preponderance of the evidence is to the effect that such lumps and ridges as were there were so formed. The defendant was bound to reasonable care only, and the difficulties of keeping clear of ice a crosswalk at the foot of a steep descent is a factor which the jury might well consider in determining whether defendant had failed in its duty to the plaintiff. That the plaintiff was badly injured is clearly shown, but it does not follow that somebody must pay her therefor. To authorize a recovery her injuries must have been caused by some failure on the part of defendant in the performance of a duty owing to her. Upon this question of fact the verdict of the jury is unsatisfactory. Judgment and order should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.